3-10-0042, people of the state of Illinois, a plea by Mark Hostler v. LaVersus Mabry, appellate by Steven Omelecki. Good morning, your honors. I'm Steven Omelecki. I'm with the Appellate Defender's Office, and I represent the defendant, LaVersus Mabry, who was convicted in a jury trial of aggravated battery with a firearm for the unlawful possession of a weapon by a felon, and he was later sentenced to a 48-year prison sentence. May it please the court, counsel. There are three issues in this case. One is whether trial defense counsel was ineffective for failing to move to sever the unlawful possession of a weapon by a felon charge from the aggravated battery charge so that the jury would not have to hear that the defendant had a prior conviction for a forcible felony. Another issue that the defense counsel did not go to the meeting was whether the trial court had been allowing hearsay testimony about a proposed meeting between the victim, Jerome Ashford, and Mabry, that Ashford did not go to the meeting, and the court allowed witness to testify that Ashford told her that he did not go to the meeting because he was afraid of what might happen. He did not feel safe in meeting the defendant. And then the third issue is whether the trial court abused its discretion in failing to grant a defense motion for a mistrial after a witness unexpectedly testified that some three to four months after the shooting for which the defendant was standing trial that the victim, Jerome Ashford, had been shot a second time. I intend to touch upon all three of these issues, but first I'd like to talk about certain things that one has to keep in mind in analyzing these issues. First is that the storyline in this case is very simple, and the cast of characters is small. The storyline is that the victim, Jerome Ashford, testified that the defendant shot him in the arm. On the other hand, Anisha Smith testified that the defendant could not have been the shooter because Mabry was at home with her at the time of the shooting. Now, the cast of characters includes the relevant characters includes the victim, Jerome Ashford, Anisha Smith, and the versus Mabry. And there are relationships between these characters. Anisha Smith was Ashford's former girlfriend and the mother of their daughter, and the defendant was the boyfriend of Anisha Smith at the time of the shooting. There was also a history of conflict between these parties. Ashford had had custody disputes, child support disputes with Smith, and also disputes concerning Social Security, I suppose, as supplemental income. There was also conflict with the defendant. There was testimony about some negative or unpleasant conversations or confrontations with the defendant, and also that Smith and Ashford's daughter had taken to calling the defendant dad and that upset Ashford. Now, this case was entirely dependent upon the credibility of Ashford. He was the only one to identify the defendant as the shooter. His girlfriend at the time, Tamara Ward, was present at the shooting. She saw the shooter, but she was unable to identify the shooter. And there are reasons, though, to doubt the credibility of Ashford and his ability to identify the defendant. Reasons to, or a person could reasonably conclude that he either mistakenly identified the defendant or purposely and falsely accused the defendant. First is the history of conflict with Anisha Smith and the defendant that I've already talked about. The second are the circumstances at the time of the shooting. According to Ashford's testimony, he had a good opportunity to observe the shooter and identify the shooter. He said that he went to his back door, he opened up the door, and he observed the shooter grinning at him for about 10 seconds. He said that the shooter wore a mask, but this mask was kind of curious in the way he described it and the way he actually drew a picture, which was invented during the trial. I mean, your eyes can see it when you look at the record. The mask left all the facial features exposed. It also left the top of his head exposed. The shooter was bald. The defendant also happened to be bald. It was a very curious mask because why would someone ostensibly would wear a mask because they want to hide their identity, but yet this mask did not hide any of the person's features at all and would have been easy to identify the person. The other thing is the testimony that he stared at him for about 10 seconds. That's a long time for someone who's an imminent victim to stare down a gunman. And if you think about it, count it out, 1, 1,000, 2, 1,000, 3, 1,000. I mean, that's a long time. And so I think a reasonable juror could look and listen to this testimony and could find reason to doubt Ashford's credibility. And then the other thing that we know when we look at this case is that at least some of the jurors did have difficulty with Ashford's testimony. The defendant had two trials. The first trial, the evidence was virtually identical, except the jury did not hear the hearsay evidence, did not hear that evidence. But that trial ended with a hung jury. The second trial, after deliberating for a while, the jury came back and told the judge that it could not reach a verdict. The judge ended up giving a prim instruction, and about an hour later, the jury returned the verdict of guilty. The jury also at that time, unsolicited, told the judge what the division was. At that time, it was nine guilty and three not guilty. So against this backdrop, you have to analyze these issues. The first issue that I'd like to talk about is ineffective assistance of counsel for failing to file a motion to sever the weapons charge from the aggravated battery charge. As a result of counsel's failure to do that, the jury heard that the defendant had a prior conviction for a forcible felon. Now, I've thought long and hard about this, and I can't think of any valid reason why counsel would forego a motion to sever and would want the jury to hear that the defendant had a prior conviction. I've discussed the circumstances of the brief. There was no indication the defendant was ever going to testify. There was no motion limiting to limit the impeachment with prior convictions. There was no reason why a reasonable attorney would not file a motion to sever. Now, the state in its brief has criticized me for my lack of imagination, but the state has only come up with two reasons. First, they say the counsel made a strategic decision to promote judicial efficiency and economy. And then the state also argues that when counsel made the strategic decision to promote judicial economy and efficiency at the first trial, and that ended in a hung jury, counsel would have felt vindicated by that, and therefore would have gone ahead with the second trial, the joint trial, and again expose the jury to hearing about the defendant's prior conviction. My response to that is, first of all, that it's unreasonable to place judicial economy above your client's interests. You cannot let the jury hear this extremely prejudicial evidence that he had a prior conviction for a forcible felon just to save the countess some money. As far as the vindication argument is concerned, it's just preposterous, I believe, to conclude that it was the jury's hearing the evidence of the prior conviction that hung it, unless the jury's hearing that evidence resulted in some of the jurors concluding that the defendant was guilty, and otherwise, perhaps, there would have been an acquittal at the first trial. Now, the second issue concerns the hearsay. Aneesha Smith testified about a meeting that she proposed between the defendant and the victim, Ashford, and she stated that she set up the meeting at the request of the defendant. It became clear during her testimony that the defendant had been released from custody after he was initially charged, although she also testified that later on it would happen to custody. And she tried to set up this meeting between the two of them because she wanted to try to talk Ashford into dropping the charges because she knew that Maverick was innocent because he was with her at the time of the shooting. She was asked if Ashford ever told her why he did not show up for the meeting, because he did not show up for the meeting. Over defense counsel's hearsay objection, she was allowed to testify that Ashford told her that he did not come because he was afraid of what would happen and he did not feel safe talking to the defendant. Now, the court let this hearsay evidence in for the purpose of impeachment. That's all this court said. The state didn't argue that it was for impeachment. And the fact is that the testimony does not impeach anyone at all. The other thing is that Ashford's state of mind two to three months after the shooting was irrelevant. And the state has conceded that in its brief. But this evidence was prejudicial because it tended to bolster Ashford's credibility and his identification of the defendant. The jury might conclude he was afraid to meet with the defendant later because the defendant had been the one who shot him. Moreover, during closing argument, the prosecutor argued that Ashford, smartly enough, did not go to the meeting because he felt a little concerned for his safety or for his health. Final issue is the denial of a mistrial after Anisha Smith unexpectedly testified that Ashford had been shot a second time. This would have been December. Again, the jury knew that the defendant had been out and knew that Ashford did not show up for this meeting between him and the defendant because he was afraid of the defendant and then they knew that Ashford, they found out that Ashford had been shot a second time. Despite the fact that the jury was, that the evidence was stricken, I believe that this was just too prejudicial when you consider all the evidence in this case. And again, the jury knew that he'd been out and then went back into custody. Jurors might assume that the defendant had been the one to shoot Ashford a second time. So we have three errors here and I think that separately or cumulatively, they deprived the defendant of a fair jury determination of his innocence or guilt. Now the state argues that any errors here are harmless. The state argues that the evidence was not close. I don't know how anyone could conclude that the evidence was not close. Again, it was a credibility battle between Ashford and Aneesha Smith and the jurors obviously had some problems with it because they came back and told the judge they couldn't reach a verdict. We also know that someone else apparently had problems with Ashford because he was shot three to four months later. The defendant could not have done that shooting because he was in the county jail at the time. The state says that the evidence is not close, but on the other hand, the state says that there's no prejudice here because if there had been prejudice, the jury would have just immediately returned a guilty verdict rather than telling the judge that they couldn't reach a verdict. It seems to me that these two arguments by the state are inconsistent and illogical. The question before this court is whether on this record you can confidently conclude that the errors did not affect the jury's verdict in this case. I don't believe that that conclusion can be reached. Therefore, the defendant prays that his conviction be reversed and the cause be remanded for a new trial. You've left out one of the cast characters in your scenario. Which one was that? Tamara Ward. Well, I mentioned her, but she recognized the other person, the non-shooter, yes. But didn't identify the defendant. But didn't identify the defendant, right, correct. But I don't know that there was any evidence that she knew the defendant, I don't believe at all. No. Do we know the division? I don't suspect it matters, but do we know the division of the jury in the first trial? No, no we don't. No, and that just came out unsolicited. Initially, the judge told the parties that he heard from bail. They just had sent word orally that they couldn't reach a verdict. He asked the jurors to put it in writing, and they came back in writing and told the judge what the division was. Thank you. Thank you very much. Mr. Russell. May it please the court? Justice Wright, you just asked a question about Tamara Ward, and I'd like to point out that her identification, while she did not specifically say it was the defendant, she did have the features of the shooter were consistent with Jerome's identification of the shooter. So I think that verifies his identification of defendant. We had the three issues, of course, that counsel has raised. First, the defendant was charged with two crimes stemming from the same act, unlawful possession of a weapon by a felon, and the aggravated battery of the firearm. Defendant asserts that counsel was ineffective for failing to sever the charges. Of course, the trial counsel's decision not to make a motion to sever the charges is a matter of trial strategy, and in this case, trial counsel's decision not to make that motion was appropriate where defendant's first trial on those same charges resulted in a hung jury and a mistrial. The evidence we don't feel was closely balanced in this case, and the stipulated evidence of defendant's unrelated 13-year-old felony conviction was not prejudicial to the defendant, but provides that if two or more offenses stem from the same act, they must be prosecuted in a single proceeding unless, in the interest of justice, the trial judge orders that they may be tried separately. The second district, rather, in Gonzales stated that the second prong in Strickland requires a defendant to show that there's a reasonable probability that defendant would have been acquitted in separate trials had the counsel severed. And while it would have been easy for trial counsel to have filed a motion for severance in this matter, the defendant has not established that there was any reasonable probability that the result would have been different under the facts of this case. The fact that defendant's first trial on these same charges resulted in the hung jury indicates the counsel's strategy not to sever was sound because he didn't sever those charges at that first trial, and the evidence was essentially the same during both trials. The defense counsel was in a better position to do the second trial because he now knew how the prosecution was going to approach the case, and he had prior testimony which potentially could be used to discredit the witnesses in the second trial. Of course, as counsel has said it, the key to this case was the jury's determination of credibility of Jerome Ashford's testimony, or identification, rather, of defendant as a shooter compared to defendant's alibi witness, Smith-Smith, who said the defendant was asleep in bed at the time of the shooting. The jury would not have found defendant guilty of the shooting had they believed that defendant was not there, had they believed that alibi defense. The fact that defendant had a prior felony conviction many years prior to this case had no bearing on the credibility of either Jerome or Ms. Smith. Was it named as a forcible felony? I believe it was, yes, sir. Did the jury learn that it was a 13-year-old conviction? I don't recall if they gave the date of the conviction. I can't answer that question at this time. People note that nothing in the record, however, shows that the jury had been prejudiced by the stipulation that defendant had committed this prior felony. The fact that the jury had indicated that they were unable to reach a verdict is a strong indication that the prior conviction was not prejudicial in this case. The jury's inability to reach the initial verdict combined with the fact that it took 50 more minutes to reach a verdict after having been given a prior instruction clearly indicates the defendant was not prejudiced by the choice not to sever the charges or by the stipulation of the defendant's prior felony conviction. That requires us to assume that there wasn't something else that the jury was hung up on. Quite likely. I would speculate, if I may, that because of the relationships involved in here that, of course, there is some concern that Jerome might be identifying the defendant because of all these relationships. However, because we get Tamara Ward's identification that matches his, I think that particular possibility would be alleviated. The people are going to stand on the brief for any other argument regarding this particular issue of ineffective assistance. We submit that the defendant has failed in his burden to demonstrate either prong of the Strickland test and ask the court to find that trial counsel was not ineffective. On this next issue, the defendant complains that the trial judge abuses discretion by allowing Ms. Smith to testify on cross-examination regarding Jerome's statement to her that he was not going to the meeting that Smith had arranged between Jerome and the defendant because Jerome did not know if, quote, something would happen at the meeting. The people argue that this testimony was consistent with previous non-hearsay testimony by Jerome and Ms. Smith, which was admitted without objection. The single sentence the defendant complains about did not prejudice the defendant. Ms. Smith had testified moments before that the defendant could not initiate contact with Jerome, quote, without it being a big blow-up or blown out of proportion, end quote. And then Jerome had earlier testified that Smith was the mother of his daughter and that the first time he met the defendant was when the defendant came to the gym where Jerome was working out and the defendant asked Jerome to step outside, you know, implying that there would have been some sort of altercation potentially. Jerome refused and the defendant delivered a threatening verbal warning that Jerome should stop saying things about the defendant because Jerome knew who the defendant was and what he did on the streets. Also, Jerome testified that he was upset that his daughter had begun to call the defendant dad. So they've got this history going on. This, of course, has been a significant reason that Jerome would have suspected that something would have happened at the meeting, but the jury could have easily concluded that the something that Jerome was wanting to avoid would have been a type of threat or a verbal confrontation that the defendant had previously initiated at the gym, or the jury could have concluded that Jerome simply wanted to avoid getting into an argument with the defendant about his daughter. Rather than jumping to the conclusion that Jerome was concerned about being physically attacked by a defendant in a very public Barnes & Noble store where the meeting was arranged. The First District and people to be right says the reason for excluding hearsay evidence is the absence of an opportunity to determine its veracity. Obviously there was an opportunity to determine the veracity of Jerome's statement to Ms. Smith regarding the reasons that he didn't attend this particular meeting. Jerome had already testified at trial. He was present during Ms. Smith's testimony and he was called as a rebuttal witness after her testimony. Thus there's no reason to exclude the hearsay testimony where he was examined and cross-examined on rebuttal after the admission of the hearsay statement attributed to him. People stand on their brief argument related to defendant's assertion that the evidence was close and all other argument regarding this particular issue and we ask the court to find that the trial judge did not use his discretion regarding the disputed testimony and find that there was no error in admitting it. The final issue that the trial judge had used his discretion when he denied defendant's motion for a new trial after defendant's alibi witness Ms. Smith gave an unresponsive answer in which she stated that Jerome Manchur didn't have been shot in the second incident. Defendant speculates that despite the fact that the trial judge struck the testimony regarding the second shooting, the jury might have believed that defendant shot Jerome in the second incident. There's nothing more than mere speculation by defendant as to what the jury might have concluded from Ms. Smith's comment. Let me pose a hypothetical question to you. What if she had said the victim was shot a second time while defendant was in jail? What do you think the state would have done? While defendant was in jail? By someone else. He was shot a second time by someone else while defendant was in jail rather than in my bed. The likelihood I can speculate would be that they would object as to relevance. Or as for Mr. Again in this speculation possibly. It's a statement that was certainly capable of being interpreted as though the defendant the victim was shot while the defendant was out. How is that not grounds for a misdemeanor? I think because the prosecution immediately objected to this testimony and it obviously shows that the people did not consider this testimony to be proper or that it was admissible in this case. Obviously had the particular testimony been relevant to the case and beneficial to the people's case the prosecutor would not have objected to the testimony at all. There is no record that indicates that the jury disregarded the trial because it was clear instruction that the testimony was that the curative instruction was delayed for some reason. It was not given right after the incident. He did not say at the time that the testimony was stricken as irrelevant and yes the curative instruction as I recall was done after closing. Again there is no indication in the record and the defendant has not demonstrated that the jury was influenced or prejudiced by Ms. Smith's unsolicited testimony. Did she testify that way in the first trial? I do not recall, Your Honor. Because you said that evidence was very similar in the first and second trial. It was but I don't recall that statement coming in in the first trial. So perhaps this little additional tidbit tip of the scales. I mean there is that argument. I mean that argument has been made that the people respectfully disagree with that contention. The people again will stand on their brief for all of their argument on this particular issue and ask the court to find that the trial judge did not abuse his discretion in denying the motion for a new trial. Does the court have any more questions of me? I guess not. Thank you. Thank you, Ms. Drossin. Mr. O'Maleky, any rebuttal? Why do you think the state objected to that statement? Well, because before trial, defense counsel had asked that he be allowed to bring in the evidence that Ashford was shot a second time. He also apparently was going to try to present some evidence that Ashford was a drug dealer and he'd been shot a second time and that the defendant could not have committed the shooting. I was trying to show, I suppose, that Ashford had other enemies and that one of those enemies could have been responsible for the first shooting. The judge ruled that that evidence couldn't come in, saying that it was just too remote to show that whoever did the second shooting might have done the first shooting. So the state was fighting that evidence before trial and so when she blurted that out, and I think she was just trying to put this all in context as to when she told the police about the alibi, the state, I think, just naturally objected because they didn't want this to come in at all. However, I agree, I think that they would have objected more strenuously if she had also said that Mabry was in jail at the time. Now, with regard to the ineffective assistance counsel argument, the state argues that they do know that you just have to show reasonable possibility that the result would have been different, but then they go on and say that I have not shown that the result would have been different. It's impossible to show that the result would have been different, but I think that looking at this record, you can conclude that there was a reasonable possibility that the result would have been different had the jury not heard that the defendant was convicted previously for a forcible felony. And it was, they were told that it was a forcible felony. They were not told the year, except that they were told it was in case number 96CF557, so if the jurors understood how these things are numbered, then they would have known, I suppose, that it was in 1996. Counsel also argues that the defendant or defense counsel would have been in a better position for the second trial after having heard the evidence at the first trial. Well, he would have been in an even better position if the jury had not heard that the defendant had a prior conviction for a forcible felony. And by the way, Your Honor, you also, or Justice Wright, you also asked whether the witness testified about the second shooting in the first trial. No, she did not. Now, as far as the hearsay is concerned, and this was not quite a single sentence because there was another follow-up question asked about that, and according to Anisha Smith, Jerome told her that he did not feel safe meeting with the defendant. And of course, in considering this hearsay error, you also have to consider that in connection with the evidence about the second shooting. Yes, I suppose there's a certain amount of speculation involved as to whether or not the jury would have thought or might have thought that the defendant was responsible for the second shooting, but I think based upon the evidence in this case, there is a substantial likelihood that some of the jurors, at least, would have concluded that the defendant was responsible for the second shooting. And again, I just ask Your Honors to keep in mind that we have three errors here. I think any one of them could have denied the defendant of a fair trial, but I believe certainly the cumulative effect of these errors denied him a fair trial. Therefore, the defendant again requests that this Court reverses conditions and demand for a new trial. Thank you, Mr. Earl. And thank you both for your argument today. We will take this matter under advisement and get back to you with a written disposition within a short time.